The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: December 4, 2025

**IN THE MATTER OF THE GUARDIANSHIP AND CONSERVATORSHIP PROCEEDINGS FOR LINDA D., a person in need of protection.**

**LINDA D.,**

Respondent-Appellant,

v.                                                                   **No. A-1-CA-41980**

**SHARON M. OTERO,**

Petitioner-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Erin B. O'Connell, District Court Judge**

Disability Rights of New Mexico
Caitlin M. Palencia
Albuquerque, NM

for Appellant

Law Office of Benjamin Hancock, P.C.
Benjamin Hancock
Albuquerque, NM

for Appellee

**OPINION**

**HANISEE, Judge.**

{1}    The opinion filed August 18, 2025, is hereby withdrawn, and this opinion is substituted in its place. Respondent Linda D. appeals the district court's order appointing a limited conservator pursuant to Article 5 of the Uniform Probate Code. *See* NMSA 1978, §§ 45-5-101 to -7-612 (1975 as amended through 2024). Respondent primarily argues, among other things, that the district court's decision to appoint a conservator is not supported by substantial evidence. We agree and reverse. As such, we do not address Respondent's other arguments.

**BACKGROUND**

{2}    This matter arose from a petition filed by Respondent's daughter (Petitioner) for the appointment of a plenary guardian and plenary conservator for Respondent. In her petition, Petitioner alleged that Respondent suffers from several mental health conditions that render her an "incapacitated person" within the meaning of Section 45-5-101(F) and that such requires appointment of a guardian and a conservator for Respondent's personal and financial affairs. After receiving the petition, the district court appointed a guardian ad litem, a court visitor, and a qualified healthcare professional (collectively, Court-Appointed Professionals), as required by statute, to evaluate Respondent's "capacity and whether a guardian and/or conservator shall be appointed." *See* § 45-5-407(B)-(D). All three Court-Appointed Professionals

conducted the required investigations into Respondent's capacity and submitted separate written reports to the district court containing their findings and recommendations. In their separate reports, each Court-Appointed Professional concluded that while a guardian was not appropriate, a limited conservatorship was necessary to protect Respondent only during those times in which Respondent was hospitalized or unable to manage her financial affairs during periods when she feels "down."

{3}     The district court then held a hearing on the matter that was attended by Respondent, who was represented by counsel, along with Petitioner and the three Court-Appointed Professionals. During the hearing, all three Court-Appointed Professionals provided testimony consistent with the conclusions in their reports: that neither a guardianship of any kind nor a plenary conservatorship was appropriate, but a limited conservatorship was necessary to protect Respondent's financial affairs during periods in which Respondent is hospitalized or incapacitated due to her mental health.

{4}     The Guardian Ad Litem (GAL), Milos Marjanovic, specifically noted three instances within the preceding year in which Respondent had attempted to self-harm and required medical attention, inpatient treatment, or law enforcement involvement. The GAL further explained that Respondent admitted she had stored approximately $30,000 in cash in her apartment and that such was a concern for Respondent's safety

because Respondent had told people in her neighborhood about the money. All three reports from the Court-Appointed Professionals noted allegations that Respondent had recently allowed at least one unidentified person to live with her in her apartment, bolstering concerns about Respondent's personal and financial safety.

{5} Both the GAL and the court visitor, Mary Galvez, testified about their concerns regarding Respondent's ability to manage her estate and financial affairs during potential future instances of mental incapacity. The GAL explained that much of Respondent's estate consists of real property and associated bank accounts held in a special needs trust established for her benefit. The court visitor testified that Respondent did not have many assets outside of the trust that needed to be managed. Specifically, Respondent receives approximately $1,600 per month in social security disability income and back child support. Collectively, the Court-Appointed Professionals noted that Respondent was expected to inherit money from the sale of real property owned by Respondent's family members, but there is no indication in the record whether that money would be placed in trust or distributed to Respondent outright in the future. The GAL expressed concern about Respondent's ability to manage income from the properties should the proceeds be distributed while Respondent was experiencing a mental health episode similar to those she experienced in the months preceding the hearing. The court visitor expressed similar concerns, stating that if Respondent's current residence was sold—which is a

property held in trust for her—during such an episode, Respondent would need someone to make financial decisions for her, such as executing a new lease. The court visitor stated that a limited conservatorship was the least restrictive means to accomplish this while protecting Respondent's personal autonomy and financial well-being.

{6} The testimony of the qualified healthcare professional, Dr. Rex Swanda, consisted mainly of his assertion that he stood by the conclusions in his report. He did, however, reiterate his opinion that Respondent "lacks full capacity" to make financial decisions and that limited conservatorship was necessary to protect her financial resources and affairs. His report stated that Respondent has struggled with financial decision-making "to the point that her long-term financial stability and security is precarious."

{7} Respondent also testified on her own behalf during the hearing. Respondent stated that since the time she was interviewed by the Court-Appointed Professionals, she had put the $30,000 in cash into a bank account that was jointly owned by her sister. Respondent further testified that she had named her sister and her nephew in an "advanced designation" of a representative payee for her social security income should Respondent become unable to manage her finances. Respondent further discussed other mechanisms of protection for herself and her assets, such as an advanced healthcare directive and a psychiatric advanced directive, which she had

already established or was in the process of establishing at the time of the hearing. Respondent also testified at length regarding her ability to manage her finances throughout the past thirty years, including during instances in which she was hospitalized due to her mental health, noting that she had no bills that went unpaid and that she had maintained a credit score of 806. Respondent stated that she has not gone into debt during these instances.

{8}     At the conclusion of the hearing, the district court found that Respondent lacked capacity within the meaning of the New Mexico Probate Code and concluded that a limited conservatorship was necessary to protect Respondent's estate and financial affairs during periods of incapacity. The court appointed a professional to act as Respondent's conservator with plenary authority, but limited the conservator's authority to periods in which Respondent "is unable to manage all of her estate and all of her financial affairs during periods of incapacity." Respondent appeals, arguing in pertinent part that substantial evidence does not support the district court's decision to appoint a limited conservator for her affairs.

**DISCUSSION**

{9}     Appointment of a conservator requires proof of certain statutory elements by clear and convincing evidence. *See* § 45-5-407(I). In district court, clear and convincing evidence is that which "instantly tilt[s] the scales in the affirmative when weighed against the evidence in opposition[,] and the fact[-]finder's mind is left with

an abiding conviction that the evidence is true." *State ex rel. Child., Youth & Fams. Dep't v. Heather S.*, 2025-NMSC-002, ¶ 43, 563 P.3d 821 (internal quotation marks and citation omitted). On appeal, when reviewing whether a district court's decision is supported by substantial evidence of a clear and convincing nature, "we do not reweigh the evidence and we will uphold the district court's judgment if, viewing the evidence in the light most favorable to the judgment, a fact[-]finder could properly determine that the clear and convincing standard was met." *Id.* (alteration, internal quotation marks, and citation omitted). If we conclude that such an evidentiary standard was met, we then review the district court's resulting legal conclusions de novo. *See id.* ¶ 44 (stating that we review the district court's conclusions of law de novo).

{10}     In general terms, a conservator may be appointed only if clear and convincing evidence establishes the following: (1) the person to be protected is either "totally incapacitated" or is "incapacitated only in specific areas"; (2) the conservatorship is necessary to "effectively manag[e] the estate or financial affairs, or both, of the person to be protected"; (3) "there are not available alternative resources that enable management" of such; (4) "the conservatorship is appropriate as the least restrictive form of intervention consistent with the preservation of the property of the person to be protected"; and (5) the proposed conservator is "qualified[,]" "suitable," and "willing to serve." Section 45-5-407(I)(1)-(5). An "incapacitated person" is defined

as "any person who demonstrates over time either partial or complete functional impairment by reason of mental illness[ or] mental deficiency . . . to the extent that the person is unable to manage the person's personal affairs or the person is unable to manage the person's estate or financial affairs or both." Section 45-5-101(F). "[I]nability to manage [one's] estate or financial affairs" is further defined as "gross mismanagement, as evidenced by recent behavior, of one's income and resources or medical inability to manage one's income and resources that has led or is likely in the near future to lead to financial vulnerability." Section 45-5-101(H). If the district court determines that "the person to be protected possesses the capacity to manage the person's estate or financial affairs, or both, the court shall dismiss the petition." Section 45-5-407(H).

{11} Respondent argues that the record lacks evidence supporting that conservatorship is necessary, however limited, because there is no evidence Respondent is incapacitated to such an extent that she could not manage her financial affairs and estate "even during times when she is experiencing depressive episodes." Respondent points to her credit score of 806, her substantial cash savings, and the facts that she has always paid her bills and has never gone into significant debt. While Respondent acknowledges that the three Court-Appointed Professionals all "relied heavily on the three instances [Respondent] received inpatient treatment" in

the year preceding the hearing, she asserts that there was no evidence connecting her mental health issues with an inability to manage her estate or financial affairs.

{12} Petitioner argues to the contrary, pointing to evidence of Respondent's longstanding struggles with mental illness. Petitioner highlights Section 45-5-101(H), which allows a person to be deemed incapacitated through a showing of "medical inability to manage one's income and resources that has led or is likely in the near future to lead to financial vulnerability." Petitioner asserts that the evidence presented regarding Respondent's hospitalizations and other mental health episodes clearly and convincingly establishes such medical inability, although intermittent, and justifies the district court's appointment of a limited conservator. For the reasons set forth, we disagree with Petitioner and conclude that substantial evidence does not exist to support the district court's finding that Respondent cannot manage her financial affairs.

{13} The most direct evidentiary support for the district court's appointment of a limited conservator is the unanimous recommendations and associated testimony of the three Court-Appointed Professionals that one was necessary. However, neither the reports nor the testimony of any of these three witnesses contains evidence that Respondent is unable to "manage [her] estate or financial affairs," as required by statute. *See* § 45-5-407(H) ("If it is determined that the person to be protected possesses the capacity to manage the person's estate or financial affairs, or both, the

court shall dismiss the petition."). For instance, the qualified healthcare professional's statement that Respondent has struggled with financial decision-making "to the point that her long-term financial stability and security is precarious" is supported only by observations of Respondent's behavior unrelated to finances. He asserted that Respondent's "behavior has resulted in significant problems in effectively managing [the property held in trust for Respondent]" and pointed to instances in which Respondent verbally forgave rent for other tenants or "interfer[ed] with the relationship between tenants and the management company." He further pointed to Respondent's "behavioral outbursts" and alcohol abuse.

{14}     While Respondent's behavior in this regard, as well as the qualified healthcare professional's conclusion that she suffers from mildly impaired cognitive functioning, may indirectly result in some adverse financial consequences for Respondent, such is not evidence that Respondent is unable to manage her estate or finances. *See* § 45-5-101(H) (defining "inability to manage [one's] estate or financial affairs" as "gross mismanagement, as evidenced by recent behavior, of one's income and resources or medical inability to manage one's income and resources"). The qualified healthcare professional's report and testimony do not contain allegations or factual circumstances showing that Respondent has mismanaged her finances but simply advances that conclusion based on her other behaviors. Any conclusion that Respondent's behavior *may* have a deleterious effect on Respondent's long-term

financial well-being is speculative and insufficient to constitute clear and convincing evidence of "medical inability" that may lead to "financial vulnerability." *See id.*

{15} The court visitor's and the GAL's reports and testimony similarly lack evidence supporting their conclusions that a limited conservatorship is necessary to protect Respondent's financial affairs. At the hearing, both expressed concern about Respondent's mental health episodes, pointing to concerns related to the quantity of cash Respondent once stored in her apartment—even if now moved to a bank account—her past hospitalizations for mental health reasons, and Respondent's anticipated inheritance of significant amounts of money if trust assets or other properties are sold to continue supporting her. The GAL specifically noted that the apartment complex in which Respondent lives and that is held in trust for her has presented significant maintenance costs and is "steadily . . . losing revenue." The court visitor, in turn, stated that "if the apartment complex had to be sold . . . [and Respondent] is in a period where she's lacking capacity, somebody would have to have authority to, for example, execute a lease." Both the court visitor and the GAL opined that during Respondent's mental health episodes, she cannot manage such financial affairs and, in those instances, requires the assistance of a conservator.

{16} As with the qualified healthcare professional's concerns, these too are conclusory and do not indicate that Respondent is, in fact, unable to manage her finances. While the record establishes that Respondent had been hospitalized and

suffered from mental health issues, neither the court visitor nor the GAL pointed to any instance in which such circumstances have had a negative effect on Respondent's financial estate or affairs. *But see* § 45-5-407(I)(2) (stating that appointment of a conservator requires "clear and convincing evidence that . . . the conservatorship is necessary as a means of effectively managing the estate or financial affairs, or both, of the person to be protected"). It is undisputed that Respondent, despite her history with mental illness and her hospitalizations related to that illness, has maintained a remarkably high credit score, has never gone into significant debt, if any, and has not let bills go unpaid. The court visitor's and the GAL's concerns that Respondent may be unable, due to a mental health crisis, to manage large sums of money if a family property is sold or to execute a new lease if necessary are also speculative. As we have already indicated, while Respondent has been hospitalized in the recent past, her financial estate has remained in good standing. Absent evidence that Respondent cannot manage her financial affairs there is little basis, if any, for us to conclude that a conservator is necessary. *See* § 45-5-407(I)(1)-(2) (requiring, for appointment of a conservator, that clear and convincing evidence show that the person to be protected is both incapacitated and that a conservatorship is "necessary as a means of effectively managing [their] estate or financial affairs"); *see also* § 45-5-101(F) (defining an "incapacitated person," in

part, as one who "by reason of mental illness[ or] mental deficiency . . . is unable to manage the person's estate or financial affairs").

{17} We further note that, even if substantial evidence did exist to establish that Respondent was at times incapacitated within the meaning of Section 45-5-101(F) and (H) during periods when she was hospitalized, there was no showing that other, less-restrictive forms of intervention were inadequate to protect Respondent's financial resources. *See* § 45-5-407(I)(4) (requiring that "the conservatorship is appropriate as the least restrictive form of intervention consistent with the preservation of the property of the person to be protected"). Respondent points out that the conservator was appointed to manage only those components of Respondent's estate outside of the trust established for her. That includes Respondent's social security income, her child support payments, and her cash assets of approximately $30,000, which is now stored in a joint bank account. As Respondent indicates, some alternatives to protecting these assets are various advance directives and a joint bank account designation. Despite the district court's assertions to the contrary, the record is absent any evidence that such measures, among others, are insufficient to adequately protect Respondent's property. For all of the above reasons, we conclude that substantial evidence does not exist to support the district court's appointment of a limited conservator for Respondent.

**CONCLUSION**

{18}    We reverse the district court's order appointing a limited conservatorship.

{19}    **IT IS SO ORDERED.**

_____
**J. MILES HANISEE, Judge**

**WE CONCUR:**

_____
**MEGAN P. DUFFY, Judge**

_____
**SHAMMARA H. HENDERSON, Judge**